
FREEDMAN + TAITELMAN, LLP
Bryan J. Freedman, Esq. (SBN 151990)
Steven B.F. Stiglitz (SBN 222667)
e-mail: bfreedman@ftllp.com
         sstiglitz@ftllp.com
1801 Century Park West, 5th Floor
Los Angeles, California 90067
Tel: (310) 201-0005
Fax: (310) 201-0045

Attorneys for Plaintiff
Travis Flores

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TRAVIS FLORES, an individual,<br><br>        Plaintiffs,<br><br>  v.<br><br>JUSTIN BALDONI, an individual; CALEB REMINGTON, an individual; WAYFARER ENTERTAINMENT, a California limited liability company; WELLE ENTERTAINMENT, a partnership of unknown origin; LIONSGATE, INC., a California corporation; CBS FILMS, INC. a Delaware corporation; AMBRY GENETICS CORPORATION, a Delaware corporation; and DOES 1 through 100, inclusive,<br><br>        Defendants. | Case No.<br><br>**COMPLAINT FOR DAMAGES FOR:**<br><br>**(1) COPYRIGHT INFRINGEMENT**<br><br>**(2) BREACH OF CONTRACT**<br><br>**(3) INTERFERENCE WITH CONTRACT**<br><br>**DEMAND FOR JURY TRIAL** |

1

**COMPLAINT**

Plaintiff Travis Flores ("Flores" or "Plaintiff") hereby alleges as follows:

## FACTS COMMON TO ALL CAUSES OF ACTION

1.  Travis Flores is an activist, philanthropist, motivational speaker, actor, screenwriter, and children's book author. After being diagnosed with Cystic Fibrosis ("CF") at the age of 4 months, and being given just a few years to live, Flores has battled CF for 30 years to develop a successful life and career. Flores has become a powerful influencer in the CF community through his activism for non-profit foundations like Make a Wish, through his online blogging and YouTube channel, through his speaking engagements across the country, and through various other works in the entertainment industry.

2.  Beginning in approximately 2010, Flores began writing a fictional screenplay, inspired by his own life and struggles, entitled "Three Feet Distance." The title was based on medical guidance that CF patients should never get closer to each other than three feet because they are prone to spreading harmful bacteria to each other. Three Feet Distance is about a group of chronically-ill teens who come together to share their stories and learn that physical distance does not define their relationships. In October 2015, Damien Pictures, an affiliate of Universal, optioned Flores' screenplay and began pre-preproduction, attaching a cast and director to the project. Concurrently, Flores registered his work with the Writers Guild of America and obtained a registered copyright. Although Damien Pictures did not end up making Three Feet Distance into a film, Flores continued pitching Three Feet Distance to film studios and other parties interested in developing his work. In February 2016, Ambry Genetics, a company whose primary mission is to sell genetic testing, including for CF, expressed interest in Three Feet Distance. At Ambry's request, pursuant to an express agreement to keep the script confidential and a standard, implied agreement in the entertainment industry to forego using the script without attaching Flores, Flores emailed a copy of that screenplay to several Ambry representatives, including Defendant Caleb Remington.

3. In January 2017, Defendant CBS Films announced that it had decided to begin development of an untitled film from Defendant Justin Baldoni and his production company, Defendant Wayfarer Entertainment about teens with CF, which would be Baldoni's feature film debut as both a director and a producer.

4. The year after the announcement of Baldoni's untitled film, Baldoni asked Flores to appear in a documentary series called "My Last Days" about young people with terminal illnesses. Flores agreed, but made a concerted effort to avoid disclosing any portion of Three Feet Distance to Baldoni. Flores kept his screenplay from Baldoni both because Flores had a policy of keeping his work confidential and because Baldoni was working on the feature film project that Flores viewed as competitive.

5. Unbeknownst to Flores, however, Baldoni already had a different source to provide him with information about Three Feet Distance. As it turned out, Baldoni's film – which became titled "Five Feet Apart" – would copy numerous elements of Three Feet Distance. Moreover, Baldoni consulted extensively about the content of "Five Feet Apart" with Caleb Remington – one of the representatives of Ambry to whom Flores sent the screenplay for "Three Feet Distance." It now has become apparent that Remington provided the script, or large portions thereof, to Baldoni and/or to others working on "Five Feet Apart" and that "Five Feet Apart" copied numerous key elements of "Three Feet Distance." Flores is pursuing this lawsuit to obtain relief from Remington and Ambry for breach of, and/or interference with, their agreement not to disclose Three Feet Distance and against Baldoni, Remington, Wayfarer, Welle, Lionsgate, and CBS Films for infringing on his registered copyright for Three Feet Distance.

6. "Five Feet Apart" is substantially similar to, or even strikingly similar to, "Three Feet Distance" in the following ways, among others:

    a. Mood: The mood of both films is extremely similar in that both are tear-jerking romance stories.

b. Themes: A theme of both works is the importance of touch in relationships, and yet the ability of people to maintain closeness even when they are unable to touch each other. Another theme that the works share is that the lead character has emotional barriers to connecting with other people. A third theme that the works share is the importance of living in the here and now.

c. Setting: Both works are set in a group environment where a number of chronically-ill teens have come together.

d. Characters:

   i. Both works center around a narrator/protagonist and prominently feature the narrator's platonic friend and the narrator's love interest. In "Three Feet Distance," the narrator/protagonist is Alex, and in "Five Feet Apart," the corresponding character is Stella. In "Three Feet Distance," the platonic friend is Kevin, and in "Five Feet Apart," the corresponding character is Poe. In "Three Feet Distance," the love interest is Jessie, and in "Five Feet Apart," the corresponding character is Will.

   ii. Stella and Alex both are 17-year-old Cystic Fibrosis patients who have barriers to creating new relationships who learn to live in the here and now and are willing to push the bounds of the medical guidance for CF patients to maintain physical distance so that they can pursue romance. In each work, the narrator initially does not want to talk about their dead sister, but the narrator ultimately discloses having a dead sister. Moreover, although the dead sister is not physically present in either work – either during the present time or in flashbacks – each work extensively addresses the sister's

death playing a key role in the narrator's emotional development.  For example, just as Stella learns from her sister, Abby, that she must live in the here and now and be spontaneous, Alex learns from his sister, McKenzie, to do things he has never done and to live life rather than thinking life.  The fact that the sister is not present in either work also reinforces the theme that relationships can remain meaningful even when people cannot physically touch each other.

      iii. Will and Jessie also are both 17-year-old CF patients.  They both are edgier than the narrator and romantically pursue the narrator.  Both of them also discuss having other experiences with romance, whereas the narrator in each work is more innocent.

      iv. Kevin and Poe both are the platonic, opposite sex friend of the narrator.  Both of them have their own romantic interests, but express difficulty committing.  In the end, both also end up realizing their mistake in failing to commit to their love interest, but end up being unable to follow through in declaring their love because illness gets in the way.

      v. The ensemble cast in both films is less relevant than the three main characters, but it is noteworthy that both works feature one nurse who plays a significant role and one doctor who plays a minimal role.

e. Plot, Pace, Sequence of Events, and Dialogue:  Numerous distinctive events occur in both works and are highly similar.

      i. In both works, mementoes play an important role in helping to overcome the barrier of being physically distant.  In both

5
**COMPLAINT**

works, the narrator has one or more important mementos from their dead sister (Alex has the journal; Stela has the artwork on her wall and the stuffed panda).  In addition, the narrator shares mementos with their love interest.  In "Three Feet Distance," Alex sends the journal to Jessie.  In "Five Feet Apart," Will gives his drawings of Stella to her.

  ii.  Both works include sex, but not involving the narrator or the love interest.  In "Three Feet Distance," Kevin has sex with Amber.  In "Five Feet Apart," Will lends his room to two of his friends to have sex.

 iii.  Both works introduce the narrator's platonic friend relationship early in the work and make the nature of the relationship clear by having one call the other an "asshole."

 iv.  In both works, one of the main characters is the guest of honor at a surprise party that the other main characters plan.

  v.  In both works, the narrator initially resists the temptation to get involved in a romantic relationship, but confesses feelings to their love interest while under the influence of drugs.

 vi.  Both works show the narrator and their love interest pushing the boundary set for their romantic relationship while skinny dipping.  In both cases, the narrator talks about their dead sister even though the event is supposed to be romantic.  Although "Three Feet Distance" shows both good and bad events happening at a dock, "Five Feet Apart" splits the water scenes into two parts, the skinny dipping at a pool and the more dangerous scene at a bridge.

vii.  Both works feature a forbidden kiss between the two main

characters. In "Five Feet Apart" the kiss takes the form of mouth-to-mouth resuscitation, but it nevertheless serves the same purpose of showing the ephemeral fulfillment of the main characters' desire to be physically close.

    viii. At the end of both works, the main characters have to separate, and one of the main characters discloses that their death is imminent.

7. The similarities between the two works extend far beyond the limited examples referenced above. Some of the similarities are seemingly small, like the wardrobe choice of showing the main character for the first time wearing a v-neck t-shirt. Others are more significant to the overall development of the works.

## JURISDICTION, VENUE AND PARTIES

8. This action arises under the Copyright Laws of the United States (17, U.S.C. §101 et seq.).

9. This Court has subject matter jurisdiction over this copyright infringement action pursuant to 17 U.S.C. §§ 101, et. seq., and 28 U.S.C. 1367 and 1338(a).

10. This Court has personal jurisdiction over defendants in that defendants conduct business in this District, defendants intentionally direct activities to this District, and the acts of infringement upon which the allegations in this Complaint are based occurred in this District.

11. Venue is proper in this Court pursuant to 28 U.S.C. §§1391(b) and (c), and/or § 1400(a).

12. Plaintiff Travis Flores ("Plaintiff" or "Flores") is an individual residing in Los Angeles County, California.

13. Upon information and belief, defendant Justin Baldoni ("Baldoni") is an individual residing in Los Angeles County, California.

14. Upon information and belief, defendant Caleb Remington

("Remington") is an individual residing in San Diego County, California.

15. Upon information and belief, defendant Wayfarer Entertainment, LLC ("Wayfarer"), is a California limited liability company with its principal place of business located in Los Angeles County, California.

16. Upon information and belief, defendant Welle Entertainment ("Welle"), is a partnership of unknown origin with its principal place of business in Los Angeles County, California.

17. Upon information and belief, defendant CBS Films, Inc. ("CBS Films"), is a Delaware corporation with its principal place of business in Los Angeles County, California.

18. Upon information and belief, defendant Ambry Genetics Corporation ("Ambry"), is a Delaware corporation with its principal place of business in Orange County, California

19. The true names and capacities, whether individual, corporate, associate or otherwise of the defendants named herein as DOES 1 through 100, inclusive, are unknown to Plaintiff, who therefore sues said defendants by such fictitious names. Plaintiff alleges on information and belief that each of the defendants, including those designated as a DOE, are responsible for the events alleged herein and the damages caused thereby as a principal, agent, co-conspirator or aider and abettor. Plaintiff will seek leave of this Court to amend this Complaint to allege the true names and capacities of such defendants when the same have been ascertained. (The named defendants and Does 1-10 are referred to collectively herein as "Defendants.")

20. Plaintiff alleges on information and belief that Defendants, at all times relative to this action, were the agents, servants, partners, joint venturers and employees of each of the other defendants and, in doing the acts alleged herein, were acting with the knowledge and consent of each of the other defendants in this action.

**COMPLAINT**

## COUNT I

## Copyright Infringement Against Baldoni, Remington, Wayfarer, Welle, Ambry, Lionsgate, CBS Films and Does 1-50

## (17 U.S.C. § 501 et seq.)

21. Plaintiff repeats and re-alleges the preceding paragraphs of this Complaint as if fully set forth herein.

22. On or about October 26, 2015, Plaintiff registered a copyright for "Three Feet Distance." The U.S. Copyright Office assigned Flores' work copyright number PAu003805778 (the "Copyright"). Although Plaintiff at one point allowed Damien Pictures to option the screenplay, Plaintiff is now the sole and exclusive owner of all right, title, and interest in and to the in "Three Feet Distance" and its written content, including the Copyright.

23. In or about February 2016, Ambry requested that Flores send a copy of the screenplay for "Three Feet Apart" to several of its representatives, including Remington, and Flores did so.

24. Baldoni, Remington, Wayfarer, Welle, Ambry, Lionsgate, CBS Films all were involved in the production of, and contributed to the content in, "Five Feet Apart."

25. Plaintiff alleges on information and belief that Baldoni, Remington, Wayfarer, Welle, Ambry, Lionsgate, CBS Films all had access to "Three Feet Distance" and used the same in connection with developing "Five Feet Apart."

26. "Five Feet Apart" copies numerous elements of "Three Feet Distance," is substantially similar to, or even strikingly similar to, "Three Feet Distance," and infringes upon the Copyright.

27. Through their conduct averred herein, Baldoni, Remington, Wayfarer, Welle, Ambry, Lionsgate, CBS Films and Does 1-50 have infringed Plaintiffs' Copyright in violation of the Copyright Act, 17 U.S.C. § 501 *et seq.*

28. Wayfarer, Welle, Lionsgate, CBS Films, and Does 1-30 have the right

1  and ability to supervise and/or control the infringing conduct of their employees
2  and independent contractors.  They failed to exercise such supervision and control
3  to the extent required by law by producing, filming, marketing, distributing, and
4  screening a motion picture that copies significant portions of the copyrighted
5  content of "Three Feet Distance" without authorization in violation of the
6  Copyright Act, 17 U.S.C. §§ 106, 501 *et seq.*
7         29.    Wayfarer, Welle, Lionsgate, CBS Films, and Does 1-30 derive, and
8  will continue to derive, a direct financial benefit from the foregoing conduct.
9         30.    Wayfarer, Welle, Lionsgate, CBS Films, and Does 1-30 have not
10 acted reasonably or in good faith.
11        31.    Plaintiff alleges on information and belief that the actions of the
12 foregoing defendants are willful, intentional, and purposeful, in disregard of
13 Plaintiffs' Copyright.
14        32.    As a direct and proximate result of said infringement by the foregoing
15 defendants, Plaintiff is entitled to damages in an amount to be proven at trial in
16 addition to the foregoing defendants' profits attributable to the infringement.
17        33.    In the alternative, Plaintiff is entitled to statutory damages of
18 $150,000 per infringement pursuant to 17 U.S.C. § 504(c).
19        34.    Plaintiff also is entitled to his attorney's fees and costs pursuant to 17
20 U.S.C. § 505.

## COUNT II

### Breach of Contract Against Ambry and Does 51-70

### (17 U.S.C. § 501 et seq.)

24        35.    Plaintiff repeats and re-alleges the preceding paragraphs of this
25 Complaint as if fully set forth herein.
26        36.    On or about February 16, 2016, after an initial meeting regarding
27 Flores' screenplay, Michael Squier, the Creative Director at Ambry, requested that
28 Flores send a copy of the screenplay for "Three Feet Apart" to him as well as to

two of Ambry's other representatives—Remington and Ambry's Art Director, Geoff Alderete.

37. Pursuant to Flores' standard operating procedures, Flores agreed to do so, but only on the condition that Ambry and its representatives keep the screenplay confidential. On behalf of Ambry, Mr. Squier agreed with Flores to those terms.

38. Moreover, pursuant to standard custom and practice in the entertainment industry, Flores and Ambry, including Mr. Squier, entered into an implied-in-fact agreement that Ambry and any of its representatives who directly or indirectly received Flores' screenplay for "Three Feet Distance" from Flores would refrain from using the screenplay without hiring Flores as the writer on the film and crediting and compensating him as such.

39. Notwithstanding that Remington had access to Flores' script for "Three Feet Distance," Remington accepted a role as a consultant on "Five Feet Apart." Plaintiff alleges on information and belief that Remington was compensated for his role as a consultant on that film and Remington disclosed the script, or large portions thereof, to other parties involved in making "Five Feet Apart," including, without limitation, Baldoni.

40. As such, Plaintiff alleges on information and belief that Ambry breached that agreement in that it failed to prevent its representative, Remington, from disclosing the script for "Three Feet Distance" and in that it failed to ensure that Flores was retained to write the screenplay when the makers of "Five Feet Apart" used extensive portions of "Three Feet Distance" in making their film.

41. As a direct and proximate result of said breaches, Plaintiff is entitled to damages in an amount to be proven at trial, along with interest at the legal rate.

## COUNT III

**Interference with Contract Against Remington and Does 71-100**

**(17 U.S.C. § 501 et seq.)**

**COMPLAINT**

42. Plaintiff repeats and re-alleges the preceding paragraphs of this Complaint as if fully set forth herein.

43. On or about February 16, 2016, after an initial meeting regarding Flores' screenplay, Michael Squier, the Creative Director at Ambry, requested that Flores send a copy of the screenplay for "Three Feet Apart" to him as well as to two of Ambry's other representatives—Remington and Ambry's Art Director, Geoff Alderete.

44. Pursuant to Flores' standard operating procedures, Flores agreed to do so, but only on the condition that Ambry and its representatives keep the screenplay confidential. On behalf of Ambry, Mr. Squier agreed with Flores to those terms.

45. Moreover, pursuant to standard custom and practice in the entertainment industry, Flores and Ambry, including Mr. Squier, entered into an implied-in-fact agreement that Ambry and any of its representatives who directly or indirectly received Flores' screenplay for "Three Feet Distance" from Flores would refrain from using the screenplay without hiring Flores as the writer on the film and crediting and compensating him as such.

46. Plaintiff alleges on information and belief that Remington and Does 71-100 knew of the foregoing express and implied-in-fact agreement.

47. Plaintiff alleges on information and belief that Remington, acting on his own behalf and not in the interest of Ambry, and Does 71-100, intentionally interfered with Ambry's express and implied-in-fact agreement with Flores by disclosing extensive portions of "Three Feet Distance" to others involved in making "Five Feet Apart," including Baldoni, with the express intention that "Five Feet Apart" use Flores' work, without ensuring that Flores receive appropriate credit or compensation.

48. Plaintiff alleges on information and belief that Remington's disclosures, which were in breach of Ambry's express and implied-in-fact

agreement with Flores, caused Baldoni, Remington, Wayfarer, Welle, Ambry, Lionsgate, CBS Films "Five Feet Apart" to copy numerous elements of "Three Feet Distance," such that "Five Feet Apart" is substantially similar to, or even strikingly similar to "Three Feet Distance."

WHEREFORE, Plaintiffs pray for judgment in their favor against Defendants, and each of them, as follows:

    a.    For actual damages and Defendants' profits in an amount according to proof at trial;

    b.    In the alternative, for statutory damages of $150,000 per infringement pursuant to 17 U.S.C. § 504(c),

    c.    For costs and attorneys' fees pursuant to 17 U.S.C. § 505.

    d.    For punitive damages;

    e.    For interest at the legal rate.

Dated: September 1, 2021                        FREEDMAN + TAITELMAN, LLP

By: /s/ Bryan J. Freedman
     Bryan J. Freedman
     Steven B.F. Stiglitz
     Attorneys for Plaintiff
     Travis Flores

**COMPLAINT**