DARRYL M. WOO (SBN 100513)
DWoo@goodwinlaw.com
**GOODWIN PROCTER LLP**
Three Embarcadero Center, Suite 2800
San Francisco, California  94111
Tel.: +1 415 733 6000
Fax: +1 415 677 9041

ELIZABETH J. LOW (SBN 308098)
ELow@goodwinlaw.com
**GOODWIN PROCTER LLP**
601 Marshall Street
Redwood City, California  94063
Tel.: +1 650 752-3100
Fax: +1 650 853-1038

Attorneys for Defendant
Ambry Genetics Corporation

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TRAVIS FLORES,<br><br>            Plaintiff,<br><br>        v.<br><br>JUSTIN BALDONI, an individual; CALEB REMINGTON, an individual; WAYFARER ENTERTAINMENT, a California limited liability company; WELLE ENTERTAINMENT, a partnership of unknown origin; LIONSGATE, INC., a California corporation; CBS FILMS, INC. a Delaware corporation; AMBRY GENETICS CORPORATION, a Delaware corporation; and DOES 1 through 100, inclusive,<br><br>            Defendants. | Case No. 2:21-cv-7063-FLA(GSJx)<br><br>**AMBRY GENETICS CORPORATION'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION TO DISMISS COUNTS I AND II OF PLAINTIFF TRAVIS FLORES' COMPLAINT**<br><br>Date:      April 8, 2022<br>Time:     1:30 p.m.<br>Courtroom:  6B<br>Judge:    Hon. Fernando L.<br>              Aenlle-Rocha<br><br>Filed Concurrently with:<br>  1. Notice of Motion<br>  2. Declaration of Darryl M. Woo<br>  3. Request for Judicial Notice<br>  4. [Proposed] Order |

# **TABLE OF CONTENTS**

Page

I.   INTRODUCTION ........................................................................... 1

II.  BACKGROUND .............................................................................. 1

III. LEGAL STANDARD ..................................................................... 4

IV.  ARGUMENT ................................................................................... 4

    A.   Flores Fails to State a Claim for Copyright Infringement ..................... 4

        1.   There Is No Claim for Direct Infringement .................................. 4

        2.   There Is No Claim for Indirect Infringement ............................. 6

    B.   Flores Fails to State a Breach of Contract Claim ................................. 7

        1.   There Are No Allegations that Ambry Breached an Implied-in-Fact Contract ......................................................................... 7

            i.    There Are No Allegations that Ambry Used Flores' Screenplay ........................................................ 8

            ii.   The Complaint Does Not Allege that Flores "Clearly Conditioned" the Disclosure of the Screenplay upon an Obligation to Pay ................................................... 9

        2.   The Statute of Limitations Bars Flores' *Desny*-based Breach of Contract Claim .................................................................. 10

V.   CONCLUSION ............................................................................... 13

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Alexander v. Metro-Goldwyn-Mayer Studios Inc.*,
   No. CV 17-3123-RSWL-KSX, 2017 WL 5633407 (C.D. Cal. Aug.
   14, 2017)................................................................................................8

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ...........................................................................4

*Barbosa by & through Co-successors in Int. v. Shasta Cty.*,
   No. 20-cv-02298-JAM-DMC, 2021 WL 1634446 (E.D. Cal. Apr.
   27, 2021)..............................................................................................5

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ...........................................................................4

*Bell v. Wilmott Storage Servs., LLC*,
   12 F.4th 1065 (9th Cir. 2021)..............................................................5

*Blaustein v. Burton*,
   9 Cal. App. 3d 161 (1970) ................................................................10

*Desny v. Wilder*,
   46 Cal. 2d 715 (1956)................................................................*passim*

*Gianelli v. Schoenfeld*, No. 21-cv-00477-JAM-KJN PS, 2021 WL
   4690724 (E.D. Cal. Oct. 7, 2021)......................................................12

*Gorlach v. Sports Club Co.*,
   209 Cal. App. 4th 1497 (2012)............................................................8

*Grosso v. Miramax Film Corp.*,
   383 F.3d 965 (9th Cir. 2004)...............................................................8

*Jordan-Benel v. Universal City Studios, Inc.*,
   859 F.3d 1184 (9th Cir. 2017).............................................................7

*NBCUniversal Media, LLC v. Superior Ct.*,
   225 Cal. App. 4th 1222 (2014)............................................10, 11, 12

ii

1

*Perfect 10, Inc. v. Amazon.com, Inc.*,
2      508 F.3d 1146 (9th Cir. 2007) ................................................................. 6

3   *Pride v. Correa*,
4      719 F.3d 1130 (9th Cir. 2013) ................................................................. 1

5   *UMG Recordings, Inc. v. Shelter Cap. Partners LLC*,
6      718 F.3d 1006 (9th Cir. 2013) ................................................................. 6

7   *Wheeler v. MicroBilt Corp.*,
       No. CV 15-3438-R, 2015 WL 13683632 (C.D. Cal. Dec. 10, 2015).................. 5

8   **Statutes**

9
10  Cal. Civ. Proc. Code § 339(1) ...................................................................... 10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

AMBRY'S MEMORANDUM OF POINTS AND AUTHORITIES ISO MOTION TO DISMISS
CASE NO. 21-CV-7063

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

This litigation concerns the allegedly unauthorized use and copying of Plaintiff Travis Flores' ("Flores") screenplay, titled *Three Feet Distance*, which Flores asserts was the genesis for the movie *Five Feet Apart*.  Fatal to Flores' claims, however, is the fact that the Complaint does not sufficiently allege that Defendant Ambry Genetics Corporation ("Ambry") had any role in the development or production of *Five Feet Apart*.  Ambry therefore respectfully requests that the Court dismiss Flores' first and second claims for copyright infringement and breach of contract, respectively, as the Complaint (Dkt. No. 1) only sets forth conclusory, speculative allegations that do not satisfy the *Iqbal/Twombly* standard.

As to the copyright infringement claim, the Complaint lacks plausible facts that Ambry engaged in either direct or indirect infringement.  The Complaint does not state a direct infringement claim because it fails to plead sufficient facts showing that Ambry was involved in the development or creation of *Five Feet Apart*.  And, because the direct infringement claim fails, so too must any claim of indirect infringement.

With respect to the breach of contract claim, the Complaint does not satisfy the requirements of *Desny v. Wilder*, 46 Cal. 2d 715 (1956), as it does not allege facts showing that Ambry knew, before receiving Flores' ideas, that it was agreeing to a contractual obligation that Flores would be reasonably compensated for the use of such ideas.  This claim is also subject to dismissal as time-barred, as it was brought approximately four months after the two-year statute of limitations expired.

### II.    BACKGROUND[1]

Flores is an activist, philanthropist, motivational speaker, actor, screenwriter,

---

[1] For purposes of this Motion only, Ambry assumes that all factual allegations in the Complaint are true.  *Pride v. Correa*, 719 F.3d 1130, 1133 (9th Cir. 2013). In the event that the Complaint is not dismissed, Ambry reserves the right to challenge the accuracy of any and all of Flores' allegations.

1

and children's book author who was diagnosed with cystic fibrosis ("CF") at the age of four months old. Compl. ¶ 1. Around 2010, Flores started writing a fictional screenplay, titled *Three Feet Distance*. *Id.* ¶ 2. This screenplay followed a group of chronically-ill teenagers and "was based on medical guidance that CF patients should never get closer to each other than three feet because they are prone to spreading harmful bacteria to each other." *Id.*

Flores pitched *Three Feet Distance* to film studios. *Id.* In October 2015, Damien Pictures optioned the screenplay and began pre-production, though it ultimately did not end up turning the screenplay into a film. *Id.* "Concurrently, Flores registered his work with the Writers Guild of America and obtained a registered copyright." *Id.*

Flores alleges that, in February 2016, Ambry "expressed interest in Three Feet Distance." *Id.* Ambry is not a film studio but "a company whose primary mission is to sell genetic testing." *Id.* Flores alleges that, at Ambry's request, he sent his *Three Feet Distance* screenplay to "several Ambry representatives, including Defendant Caleb Remington [('Remington'),]" Creative Director Michael Squier, and Art Director Geoff Alderete. *Id.* ¶¶ 2, 36. He did so "pursuant to an express agreement to keep the script confidential and a standard, implied agreement in the entertainment industry to forgo using the script without attaching Flores[.]" *Id.* ¶ 2.

In January 2017, CBS Films, Inc. ("CBS Films") announced the development of an untitled film from Justin Baldoni ("Baldoni") and his production company, Wayfarer Entertainment, LLC ("Wayfarer Entertainment"). *Id.* ¶ 3. The film was "about teens with CF" and "would be Baldoni's feature film debut as both a director and a producer." *Id.* Entertainment industry press also announced at that time that CBS had hired two writers, Mikki Daughtry and Tobias Iaconis.[2] Request for Judicial Notice ("RJN"), Ex. A. The January 26, 2017 article described the film as

---

[2] "CBS Films Buys Untitled Justin Baldoni Pitch In Vein Of 'The Fault In Our Stars,'" Deadline, January 26, 2017, https://deadline.com/2017/01/cbs-films-here-now-ya-movie-pitch-mikki-daughtry-tobias-iaconis-1201893672/

follows: "The YA [Young Adult] story, in the vein of *The Fault in Our Stars*, is a tear-jerking romancer about two teens with life-threatening illnesses who meet in a hospital and fall in love, despite the fact that their fragile health makes them an imminent danger to each other." *Id.* The film was eventually titled *Five Feet Apart*. *Id.* ¶ 5.

Although CBS had hired the writers for *Five Feet Apart* by January 2017 and had publicly disclosed its ideas for the movie by that time, Baldoni and Remington did not first meet until several months later, on or after about April 18, 2017, and there is no allegation to the contrary. Despite the timeline disconnect, with CBS Films' public announcement being made of the film that resulted in *Five Feet Apart* <u>before</u> Remington had ever met Baldoni, Flores nevertheless alleges that "Remington provided the script, or large portions thereof, to Baldoni and/or to others working on 'Five Feet Apart' and that 'Five Feet Apart' copied numerous key elements of 'Three Feet Distance.'" Compl. ¶ 5. Specifically, Flores alleges that the mood, theme, settings, characters, plot, pace, sequence of events, and dialogue of CBS' *Five Feet Apart* are substantially or strikingly similar to Flores' *Three Feet Distance*. *Id.* ¶¶ 6-7.[3]

A trailer for *Five Feet Apart* was released on November 2, 2018, via Instagram, and on January 16, 2019, via YouTube. Request for Judicial Notice ("RJN"), Exs. B & C.

Flores initiated this lawsuit on September 1, 2021. *See* Compl. He names as defendants Baldoni, Wayfarer Entertainment, Welle Entertainment, CBS Films, and Lionsgate, Inc.[4] (collectively, the "Film Defendants") and Remington. *Id.* ¶¶ 13-18. Flores asserts three claims, for: (1) copyright infringement against all defendants,

---

[3] A viewing of *Five Feet Apart*, available on Netflix, demonstrates the lack of such alleged similarities. "Watch Five Feet Part | Netflix," Netflix, https://www.netflix.com/title/80236271?source=35.
[4] Lionsgate, Inc. is not identified under the "Jurisdiction, Venue, and Parties" section of the Complaint, but is named in the caption and as to Count I for copyright infringement.

(2) breach of contract against Ambry, and (3) interference with contract against Remington. *Id.* ¶¶ 21-48. Ambry is named only in the first two counts, and its sole alleged role is providing a copy of Flores' screenplay to the Film Defendants.

## III.    LEGAL STANDARD

"To survive a motion to dismiss" under Fed. R. Civ. P. 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Therefore, a plaintiff must set forth factual allegations sufficient to allow "for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

Although the Court must assume the truth of the facts alleged and must draw all reasonable inferences in the non-movant's favor, the Court is "not bound to accept as true legal conclusion[s] couched as . . . factual allegation[s]." *Twombly*, 550 U.S. at 555. Therefore, a complaint must contain more than just "threadbare recitals of a cause of action's elements, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678.

## IV.    ARGUMENT

As set forth below, Flores' sole claims against Ambry – for copyright infringement and breach of contract – should be dismissed.

### A.    Flores Fails to State a Claim for Copyright Infringement

The Complaint lacks allegations sufficient to establish a claim for either direct or indirect copyright infringement against Ambry, a clinical diagnostic testing company.

#### 1.    There Is No Claim for Direct Infringement

Flores does not allege that Ambry directly infringed his allegedly copyrighted work. "To establish a prima facie case of direct copyright infringement, [Flores]

must show that he owns the copyright, and that [Defendants] violated one of the exclusive rights in copyright set forth in 17 U.S.C. § 106." *Bell v. Wilmott Storage Servs., LLC*, 12 F.4th 1065, 1071 (9th Cir. 2021) (citing *A&M Recs., Inc. v. Napster, Inc.*, 239 F.3d 1004, 1013 (9th Cir. 2001); 17 U.S.C. § 501(a)).

The Complaint lumps Defendants together to allege that (1) "Baldoni, Remington, Wayfarer, Welle, Ambry, Lionsgate, CBS Films all were involved in the production of, and contributed to the content in, 'Five Feet Apart[;]'" and (2) "Baldoni, Remington, Wayfarer, Welle, Ambry, Lionsgate, CBS Films all had access to 'Three Feet Distance' and used the same in connection with developing 'Five Feet Apart.'" *Id.* ¶¶ 24-25.

However, "[a] plaintiff suing multiple defendants must allege the basis of his claim against each defendant to satisfy Rule 8(a)(2)." *Wheeler v. MicroBilt Corp.*, No. CV 15-3438-R, 2015 WL 13683632, at *1 (C.D. Cal. Dec. 10, 2015) (dismissing complaint where "[e]very single non-jurisdictional allegation in Plaintiff's Amended Complaint is alleged jointly against 'Defendants,' rather than distinguishing the particular roles of either each individual Defendant"); *Barbosa by & through Co-successors in Int. v. Shasta Cty.*, No. 20-cv-02298-JAM-DMC, 2021 WL 1634446, at *5 (E.D. Cal. Apr. 27, 2021) ("It is well-settled that 'undifferentiated pleading against multiple defendants is improper.' . . . Rather, the complaint 'must differentiate between each of the defendants and clearly state the factual basis for each cause of action as to each specific defendant.'") (citations omitted).

There are no allegations that describe how Ambry is alleged to have infringed Flores' copyright in his screenplay. For instance, there are no facts describing ***how*** Ambry was involved in the production and creation of *Five Feet Apart*, including ***how*** Ambry used the *Three Feet Distance* screenplay to do so. Without more, Flores' allegations are merely speculative, conclusory, and fail to give rise to a plausible inference of copyright infringement.

Notably absent are any allegations that Ambry produced an infringing work from Flores' screenplay, or participated in, or benefitted from the production of CBS' *Five Feet Apart*.  While the Complaint alleges that "Wayfarer, Welle, Lionsgate, CBS Films, and Does 1-30 derive, and will continue to derive, a direct financial benefit from the foregoing conduct" (*id.* ¶ 29), it conspicuously omits any mention of Ambry.

### 2.    There Is No Claim for Indirect Infringement

As shown above, Flores fails to plead direct copyright infringement against Ambry.  Flores also fails to state a claim of indirect infringement against Ambry.  *UMG Recordings, Inc. v. Shelter Cap. Partners LLC*, 718 F.3d 1006, 1031 (9th Cir. 2013) ("It is well-established that '[s]econdary liability for copyright infringement does not exist in the absence of direct infringement. . . .'") (quoting *Napster*, 239 F.3d at 1013 n.2) (brackets and ellipses in the original).  Indirect infringement thus cannot be based on the nonexistent direct infringement by Ambry.

To the extent that Flores seeks to base his claim of indirect infringement against Ambry on the Film Defendants' alleged direct infringement, that claim fails also.  Such liability requires that the defendant "knowingly takes steps that are substantially certain to result in such direct infringement."  *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1171 (9th Cir. 2007).  There are no allegations, however, that Ambry supplied a copy of Flores' screenplay to the Film Defendants knowing they would use it to infringe Flores' copyrights, or any reasonable inferences of such.  To the contrary, the Complaint admits that Flores was pitching his screenplay to film studios, such that the alleged passing of Flores' work to the Film Defendants was simply in furtherance of Flores' pitch efforts.  Compl. ¶ 2 ("Although Damien Pictures did not end up making Three Feet Distance into a film, Flores continued pitching Three Feet Distance to film studios and other parties interested in developing his work.").  No pleaded facts plausibly show Ambry's

6

1    knowing intent to support the others' alleged infringement.

2              **B.     Flores Fails to State a Breach of Contract Claim**

3         Flores' breach of contract claim against Ambry fails for at least two

4    independent reasons.  First, Flores fails to allege any facts that Ambry used the *Three*

5    *Feet Distance* screenplay, or had any involvement in the creation of *Five Feet Apart*.

6    Second, the two-year statute of limitations bars the claim.

7              **1.     There Are No Allegations that Ambry Breached an Implied-in-Fact Contract**

8

9         The Complaint fails to allege any facts that Ambry used the *Three Feet*

10   *Distance* screenplay.  The breach of contract claim fails for this reason alone, but

11   there are also no facts that suggest that Flores "clearly conditioned" the (nonexistent)

12   use of the screenplay upon reasonable payment.

13        Flores' breach of implied contract claim stems from California common law

14   established to remedy situations found in the film industry where a plaintiff might

15   present a script or idea for a film or TV show and then find that the show's producers

16   used that idea without paying for it.  The seminal case, *Desny v. Wilder*, 46 Cal. 2d

17   715 (1956), involved a screenwriter's submission of an idea for a movie based on the

18   life of Floyd Collins, an American cave explorer, which defendants allegedly used in

19   producing a movie titled *Ace In The Hole*.  In *Desny*, "the California Supreme

20   Court . . . held that contract law may provide protection to a person who submits an

21   idea to others with the understanding that the idea is submitted in consideration for a

22   promise of payment for its use." *Jordan-Benel v. Universal City Studios, Inc.*, 859

23   F.3d 1184, 1191 (9th Cir. 2017) (citing *Desny*, 46 Cal. 2d). "To establish a *Desny*

24   claim for breach of implied-in-fact contract, the plaintiff must show that the plaintiff

25   prepared the work, disclosed the work to the offeree for sale, and did so under

26   circumstances from which it could be concluded that the offeree voluntarily accepted

27   the disclosure knowing the conditions on which it was tendered and the reasonable

28

AMBRY'S MEMORANDUM OF POINTS AND AUTHORITIES ISO MOTION TO DISMISS
CASE NO. 21-CV-7063

value of the work." *Grosso v. Miramax Film Corp.*, 383 F.3d 965, 967 (9th Cir. 2004), *opinion amended on denial of reh'g*, 400 F.3d 658 (9th Cir. 2005).

But "[a]n implied contract in no less degree than an express contract, must be founded upon an ascertained agreement of the parties to perform it, the substantial difference between the two being the mere mode of proof by which they are to be respectively established." *Gorlach v. Sports Club Co.*, 209 Cal. App. 4th 1497, 1507 (2012) (cleaned up). "Although an implied in fact contract may be inferred from the conduct, situation or mutual relation of the parties, the very heart of this kind of agreement is an *intent* to promise." *Id.* (cleaned up; emphasis in the original). Moreover, California "law will not imply a promise to pay for an idea from the mere facts that the idea has been conveyed, is valuable, and has been used for profit; this is true even though the conveyance has been made with the hope or expectation that some obligation will ensue." *Desny*, 46 Cal. 2d at 739. Indeed, "courts have been wary to let an implied contract claim proceed at the motion to dismiss stage." *Alexander v. Metro-Goldwyn-Mayer Studios Inc.*, No. CV 17-3123-RSWL-KSX, 2017 WL 5633407, at *9 (C.D. Cal. Aug. 14, 2017) (granting motion to dismiss *Desny* claim).

### i.     There Are No Allegations that Ambry Used Flores' Screenplay

Flores' *Desny* claim fails because there are no allegations that Ambry used the *Three Feet Distance* screenplay. *Desny*, 46 Cal. 2d at 739 (requiring that "the idea has been conveyed, is valuable, and ***has been used for profit***" by the defendant) (emphasis added). There are also no allegations that Ambry was involved in the creation or production of "Five Feet Apart," or that Ambry received any revenue from "Five Feet Apart," from the Film Defendants' box office sales, or from any other means by which Ambry used Flores' screenplay for profit – Ambry's alleged use is entirely missing.

ii.     **The Complaint Does Not Allege that Flores "Clearly Conditioned" the Disclosure of the Screenplay upon an Obligation to Pay**

The Complaint makes the conclusory allegation that, "pursuant to standard custom and practice in the entertainment industry, Flores and Ambry, including Mr. Squier, entered into an implied-in-fact agreement that Ambry and any of its representatives who directly or indirectly received Flores' screenplay for 'Three Feet Distance' from Flores would refrain from using the screenplay without hiring Flores as the writer on the film and crediting and compensating him as such." Compl. ¶ 38. An implied-in-fact contract exists, however, only where the offeree "know[s] the condition before he knows the idea [and ] voluntarily accepts its disclosure (necessarily on the specified basis)." *Desny*, 46 Cal. 2d at 739.

It is not apparent from the face of the Complaint or any of its allegations that Ambry knew that any use Ambry might make of Flores' screenplay – even allegedly forwarding it to someone else – would require Ambry to hire Flores or to pay him. To the contrary, Flores admits that he was pitching his screenplay to studios, and if anything was implied by the Complaint's allegations, it was that *Flores would pay Ambry* a commission or fee if Ambry found a studio willing to produce Flores' screenplay.

Moreover, there are no facts pled that plausibly suggest that Ambry or any of its employees would even be aware of any "standard custom[s] and practice[s] in the entertainment industry[.]" Compl. ¶ 38.  To the contrary, the Complaint alleges that Ambry is "a company whose primary mission is to sell genetic testing[.]" *Id.* ¶ 2. The Complaint does not allege that Ambry operated in the entertainment industry when these events allegedly took place, or that it does now.  Flores fails to allege any facts rendering it plausible why Ambry would be aware of the customs and practices in an entirely different field than the one in which it works.  The Complaint thus fails

9

1  to show that Ambry was aware of the conditions on which it allegedly "accepted" the
2  *Three Feet Distance* screenplay.

### 2. The Statute of Limitations Bars Flores' *Desny*-based Breach of Contract Claim

5  Flores' *Desny* claim filed on September 1, 2021, should also be dismissed
6  because it is barred by the statute of limitations, which expired by no later than
7  April 29, 2021.  Under California law, a *Desny* claim is subject to a two-year statute
8  of limitations.  Cal. Civ. Proc. Code § 339(1); *Blaustein v. Burton*, 9 Cal. App. 3d
9  161, 185-86 (1970) (breach of implied contract claim governed by two-year statute
10 of limitations set forth in section 339(1)).  "A suit for breach of an implied contract
11 not to exploit an idea without paying for it arises only with the sale or exploitation of
12 the idea." *NBCUniversal Media, LLC v. Superior Ct.*, 225 Cal. App. 4th 1222, 1231
13 (2014) (cleaned up).  For breach of implied contract claims, "California courts
14 generally assume that the accrual date is the date on which the work is released to the
15 general public, as the public release would destroy any further marketability." *Id.*
16 (cleaned up).

17  The first trailer containing the ideas and concepts for *Five Feet Apart* was
18 publicly released on the film's Instagram page on or about November 2, 2018, and
19 was posted to YouTube on January 16, 2019.  RJN, Exs. B & C.

20  In addition to the film trailers, the YouTube page for the Five Feet Apart trailer
21 provides the following summary of the film, which shares key plot details that are
22 also revealed in the trailer itself:

> Stella Grant (Haley Lu Richardson) is every bit a seventeen-year-old:
> she's attached to her laptop and loves her best friends. But unlike most
> teenagers, she spends much of her time living in a hospital as a cystic
> fibrosis patient.  Her life is full of routines, boundaries and self-control
> -- all of which is put to the test when she meets an impossibly charming
> fellow CF patient named Will Newman (Cole Sprouse).
>
> There's an instant flirtation, though restrictions dictate that they must

maintain a safe distance between them.  As their connection intensifies, so does the temptation to throw the rules out the window and embrace that attraction.  Further complicating matters is Will's potentially dangerous rebellion against his ongoing medical treatment.  Stella gradually inspires Will to live life to the fullest, but can she ultimately save the person she loves when even a single touch is off limits?

RJN, Ex. B.  Several of these elements are ones that Flores alleges are "substantially similar" to *Three Feet Distance*, including the fact that *Five Feet Apart* is a romance story between two teens with CF (Compl. ¶¶ 6(a), 6(d)(ii), 6(d)(iii)) who must stay physically distant from one another (*id.* ¶¶ 6(d)(ii), 6(e)(i)).

Both the November 2, 2018 and January 16, 2019 releases triggered the statute of limitations.  In *NBCUniversal Media*, the plaintiffs brought breach of implied contract and breach of confidence claims against the petitioners.  225 Cal. App. 4th at 1226.  Like Flores, the *NBCUniversal Media* plaintiffs alleged that "they [had] presented ideas and concepts for a television program . . . to petitioners, 'consistent with well-established customs and practices of the entertainment industry.'"  *Id.*  The plaintiffs further alleged that the "petitioners breached an implied contractual obligation not to 'disclose, use and/or exploit the [ideas and concepts] without [the p]laintiffs' permission and/or without compensating [p]laintiffs in the form of payments, credit and other consideration.'"  *Id.*

The defendant petitioners argued that the breach of implied contract claim was time-barred, as the television show that allegedly used the plaintiffs' ideas debuted on October 6, 2004, but the plaintiffs did not file their lawsuit until November 4, 2006.  *Id.* at 1226-27.

The California Court of Appeal held that

[a]s a matter of law, [the plaintiffs'] causes of action were complete no later than the date of the initial broadcast [of the television program], October 6, 2004, because on that date, the marketability of the [claimed idea] was destroyed due to its disclosure to the public. . .  Due to the initial broadcast, petitioners' alleged breach of the implied contract or

11

1
2
3

> breach of confidence was no longer particularly difficult for [the plaintiffs] to observe or understand. . . . Likewise, the injury itself (or its cause) was no longer hidden or beyond what the ordinary person could be expected to understand.

4   *Id.* at 1234 (cleaned up).  Importantly, "[t]he mere fact that [the plaintiffs] did not

5   personally view the program until sometime after the first broadcast is irrelevant, as

6   the discovery rule does not operate to delay accrual of a cause of action beyond the

7   point at which their factual basis became accessible to plaintiff to the same degree as

8   it was accessible to every other member of the public."  *Id.* (cleaned up).  Thus, the

9   plaintiffs' filing of their complaint on November 8, 2006 – two years and one month

10  after the initial broadcast of the television program aired on October 6, 2004 – barred

11  their claim.  *Id.* at 1236.

12       Accounting for the California Judicial Council's Emergency Rule 9, which

13  tolled civil statute of limitations for causes of action that exceed 180 days from

14  April 6, 2020 to October 1, 2020, the deadline for Flores to file his lawsuit expired

15  as early as April 29, 2021 (two years and 178 days after the November 2, 2018,

16  release of the trailer on Instagram), and at the latest, July 13, 2021 (two years and

17  178 days after the January 16, 2019, release of the trailer on YouTube).  *See* Cal.

18  Rules of Court app. I, Emergency rule 9(a) (adopted April 6, 2020, amended effective

19  May 29, 2020); *Gianelli v. Schoenfeld*, No. 21-cv-00477-JAM-KJN PS, 2021 WL

20  4690724, at *18 (E.D. Cal. Oct. 7, 2021), *report and recommendation adopted*, 2021

21  WL 5154163 (E.D. Cal. Nov. 5, 2021) ("Federal and state courts, alike, are treating

22  Emergency Rule 9 as having the practical effect of adding 178 days to unexpired

23  statutes of limitations.") (collecting cases).

24       Flores' Complaint, however, was not filed until September 1, 2021 – more than

25  four months after the limitations period expired.  It is irrelevant whether Flores

26  personally viewed the trailer on November 2, 2018.  As the *NBCUniversal Media*

27  Court makes clear, such a failure does not serve to delay the accrual of Flores' *Desny*

28  claim.  Flores' *Desny* claim is thus time-barred, and there are no facts that Flores

1    could allege to make his *Desny* claim timely.  For this reason, leave to amend would

2    be futile.

3    **V.      CONCLUSION**

4          For the forgoing reasons, Ambry respectfully requests that the Court dismiss

5    Flores' first and second claims as to Ambry, the sole claims directed against it,

6    without leave to amend.

7

8    Dated:          February 28, 2022          GOODWIN PROCTER LLP

9

10                                             By: */s/ Darryl M. Woo*

11                                             Darryl M. Woo
                                               *DWoo@goodwinlaw.com*

12                                             Elizabeth J. Low
                                               *ELow@goodwinlaw.com*

13

14                                             Attorneys for Defendant
                                               Ambry Genetics Corporation

15

16

17

18

19

20

21

22

23

24

25

26

27

28

13